In the Matter of MORRIS DANGLER, an Attorney, Respondent.

First Department, April 20, 1923.

Attorney and client — disbarment — attorney practiced law after being suspended, obtained money by false representations and failed to protect interest of client — disbarment ordered.

An attorney should be disbarred where it appears that after he was suspended from practice for a period of one year and until further order of the court, and during the continuance of his suspension, he continued to practice law, obtained money from his clients by false representations and failed to protect their interests or to do anything in furtherance of the prosecution of the cases in which he was employed.

DISCIPLINARY proceedings instituted by the Association of the Bar of the City of New York.

*Einar Chrystie,* for the Association of the Bar of the City of New York, petitioner.

*S. Edward Ginsburg,* for the respondent.

DOWLING, J.:

The respondent, Morris Dangler, was admitted to practice as an attorney and counselor at law in the State of New York in March, 1900, at a term of the Appellate Division, Second Department.

On June 16, 1920, he was suspended from practice for a period of one year and until the further order of the court, by an order of this court (192 App. Div. 237). He has never been reinstated.

The charges in this proceeding are to the effect that the respondent has violated the terms of the order of suspension; and that he has continued to practice as an attorney at law contrary to the terms of the order; and that he has failed to properly take care of his clients' interests, although paid to do so.

The respondent, although given ample opportunity to defend the charges made against him, has failed to offer any evidence in his own behalf. The record shows that the first hearing was held before the official referee on the 31st day of October, 1921; and that

the case was not closed until November 27, 1922, over a year later, the delay in the progress of the proceeding having been due mainly to adjournments granted at the request of the respondent by reason of change of counsel and his serious illness.

His attorney complained at one hearing that his client had failed to keep his promises to him; and that he did not wish to become involved in the case; and that after the respondent had appeared personally, he was in fact represented by another attorney. It also appears by respondent's own statements that he had originally consented to an order striking his name from the rolls, if publicity could be avoided; but as he could get no such guaranty, he never in fact executed a consent.

Although respondent was given additional time to file a brief in answer to the motion herein, he has failed to do so, and has made no answer whatever to the charges against him, serious as they are.

The petitioner produced before the referee evidence in support of the charges, which is largely documentary and absolutely indisputable, which evidence establishes beyond question four separate instances of misconduct by the respondent. Only one of these, however (the Wisan case), is referred to at length by the referee in his report to this court, although he states " other transactions of a similar character have been proven herein against the respondent."

1. The Finley case: Sarah Finley has a son named William Finley, also known as William Riley. In February, 1919, he was convicted of a felony in the Court of General Sessions of the Peace of the City of New York, and in May or June, 1919, Mrs. Finley retained the respondent to take an appeal from the judgment of conviction. The respondent agreed to take the appeal and pay the expenses of printing the record for the sum of $150. The respondent caused a notice of appeal to be served on January 28, 1920. He rendered no other services in the matter. On October 28, 1920, a representative of the district attorney's office was informed by the respondent that the record on appeal would be served in about two weeks. The record was not served. On December 15, 1920, papers in support of an application to dismiss the appeal for failure to prosecute the same were served upon the respondent returnable January 7, 1921. The respondent failed to attend upon the return day of the motion, and on January 14, 1921, the appeal was dismissed.

At no time during the pendency of the case was the district attorney's office informed that he was suspended from practice by an order entered June 16, 1920. On January 14, 1921, when the

order dismissing the appeal was served, an admission of service was indorsed on the district attorney's copy, " Morris Dangler, Attorney for Appellant."

On February 20, 1920, the respondent wrote to William Finley as follows:

" THE PEOPLE *vs.* RILEY                    *February* 20, 1920.
" Mr. WILLIAM FINLEY,
    " 135 State Street,
        " No. 37054, Auburn, N. Y.

" DEAR SIR.— I have your communication of the 17th inst. and contents noted.   The rough copy of the printed case on appeal has been returned to this office and has been examined by me.   I will proceed to have the same printed and will advise you and forward you a copy thereof.   Just as soon as the same is ready you will hear from me.           Very truly yours,
" MD /RGG ·                    MORRIS DANGLER."

On June 16, 1920, the respondent again wrote to Finley as follows:

" PEOPLE *vs.* RILEY                    *June* 16, 1920.
" Mr. WILLIAM FINLEY,
    " 135 State Street,
        " Auburn, N. Y.:

" DEAR SIR.— The case on appeal and the printing of memorandum are about to be completed.   I will send you a copy immediately upon receipt of same.   This is all the news that I have for you at this time.           Very truly yours,
" MD /BG                    MORRIS DANGLER "

This letter was sent on the very day that the order suspending the respondent from practice was entered.   The decision of the Appellate Division of the Supreme Court had been handed down some time before that, and a proposed order of suspension with notice of settlement had been served on the respondent on June 9, 1920.   The respondent took absolutely no steps to protect his client's interests after receiving a fee paid by Mrs. Finley, and as a result of his neglect the appeal was dismissed.

2. The Wisan case: On April 3, 1921, Mrs. Frances Wisan called upon the respondent regarding an action for divorce to be brought against her husband.   The respondent assured her that he could obtain a divorce for her and agreed to represent her for a fee of $300.   He gave her a retainer signed by him and reading as follows:

" I hereby retain Morris Dangler as my attorney to investigate the actions of my husband and procure if possible such legal evi-

d nce as necessary to commence an action for absolute divorce against my said husband.

"I agree to pay attorney as follows: One hundred ($100) dollars on the signing and execution of this agreement the receipt whereof is hereby acknowledged; fifty ($50) dollars when evidence is procured; fifty ($50) dollars when the action is on the trial calendar; the balance of one hundred ($100) dollars when I receive my interlocutory decree of divorce.

"Dated — New York April 4th, 1921.
"MORRIS DANGLER<br>"70 Flatbush Ave. Bklyn."

At the time he made this agreement with Mrs. Wisan, respondent had been under suspension from practice since the preceding June.

Mrs. Wisan gave the respondent $50 on April 4, 1921, and another sum of $50 on April 5, 1921, receiving from him receipts therefor. On June 3, 1921, he called her on the telephone, advised her that he had procured the necessary evidence, and asked for more money. After some negotiations regarding the amount, Mrs. Wisan paid him the further sum of $100 on June 3, 1921. Thereafter from time to time Mrs. Wisan attempted to see the respondent, without result. No action for divorce was ever brought so far as Mrs. Wisan has been able to ascertain. She finally located the respondent in a millinery store owned by his brother, and demanded the return of her money. A few days after this interview she received a letter and a paper inclosed therein, of which the following are copies:
"*Jan 9th* 1922

"DEAR MADAM.— Enclosed please find paper which you will sign and execute before notary public and return to me. Upon receipt of same I will forward you such moneys as are come to you.
"Truly yours<br>"MORRIS DANGLER."

"*Jan 9th* 1922

"*In Consideration* of receiving moneys paid by me to Morris Dangler I agree to cancel my agreement of retainer with the said Morris Dangler and direct him to discontinue any further proceedings. I further release him from any further liability.

"State of New York ⎱
County of Kings   ⎰

"————— [L. S.]

"On this     day of January 1922 before me personally came ——— Wisan to me known and known to me to be the individual described in and who executed the above instrument and duly acknowledged to me she executed the same."

She declined to sign the papers, and no part of the money paid to the respondent has been returned.

At no time during the negotiations with Mrs. Wisan did the respondent advise her that he was under suspension and prohibited by the order of the court from practicing as an attorney at law.

The evidence in regard to this case establishes that the respondent obtained money by false representations, and that he did absolutely nothing in behalf of the client.

3. The Chandler case: In March, 1920, Mrs. May G. Chandler called upon the respondent at his office regarding a proposed divorce action to be brought against her husband. The respondent agreed to procure a divorce for the sum of $225. The agreement was in writing, and the following is a copy thereof:

" I, MAY G. CHANDLER, of 56 Marble Hill Avenue, in the Borough of Manhattan, City of New York, hereby retain MORRIS DANGLER, as my attorney to procure for me an absolute divorce against my husband, WILLIAM D. CHANDLER of Washington, D. C. hereby representing that my husband has wilfully deserted me for a period of five (5) years or more.

" My attorney to have full right and authority to employ a New Jersey attorney to try the above action.

" I agree to pay my attorney the sum of Two Hundred and Twenty Five ($225.00) Dollars therefor, as follows:

" Fifty ($50) Dollars on the signing of this agreement; One Hundred ($100.00) dollars when the case is on the calendar for trial and the balance of Seventy Five ($75.00) Dollars when my attorney delivers to me a decree of divorce.

" The above sum of Two Hundred and Twenty Five ($225.00) Dollars shall represent all monies to be paid by way of disbursements, fees or otherwise.

Dated, NEW YORK, *March 18th*, 1920.

" MORRIS DANGLER

" MAY G. CHANDLER

" March 20th, 1920

". Recd $50.00 on account as per retainer above

" MORRIS DANGLER."

Mrs. Chandler paid the respondent $50 on the day of the execution of the retainer. Thereafter she went to his office from time to time, but was unable to find out what, if anything, had been done in her behalf. On June 24, 1920, he called her on the telephone and requested her to bring him the sum of $150 immediately. After some negotiations she finally agreed to sell some Liberty

bonds and give him $125. On June 24, 1920, she gave the respondent the sum of $125, and procured from him a receipt, of which the following is a copy:

"*June 24th* 1920

" Received from Mrs. Mary G. Chandler the sum of one hundred and twenty-five ($125) dollars on account of the above entitled action.
" CHANDLER *vs.* CHANDLER        MORRIS DANGLER."

This money was demanded and received by the respondent eight days after the entry of the order suspending him from practice. Mrs. Chandler continued to press him to take some action in her behalf, but could obtain no satisfaction. In September, 1921, she received a letter from the respondent, of which the following is a copy:

" *September* 12, 1921.

" Mrs. MARY G. CHANDLER,
        48 Ft. Charles Pl.,
                New York City:

" DEAR MRS. CHANDLER.— You will receive notice to call at the office of S. Edward Ginsburg, attorney to continue your matter.

" Truly yours,
                " MORRIS DANGLER."

Mrs. Chandler had an interview with Mr. Ginsburg, but nothing has been done in her behalf and no part of the money has been refunded. The respondent did not at any time prior to September, 1921, advise his client that he had been suspended from practice or that he could not look after her interests.

4. The Stanton case: In May, 1920, Mrs. Caroline R. Stanton consulted the respondent regarding an action for divorce and the custody of her child. Mrs. Stanton told the respondent that the case was pending in New Jersey. The respondent stated that he would take care of it. Mrs. Stanton paid him thirty dollars on account of the services, and obtained from him a receipt of which the following is a copy:

" I hereby retain MORRIS DANGLER as my attorney to look after the interest of myself and my minor child, MAUD CAROLINE, and I hereby agree to pay my attorney the sum of fifty ($50) dollars, therefor as follows: Thirty ($30) dollars, the receipt of which is hereby acknowledged, on the signing of this agreement, and the balance of twenty ($20) dollars when proceedings are commenced.

" Dated *May 20th*, 1920        MORRIS DANGLER."

In October, 1920, pursuant to the respondent's request, Mrs. Stanton paid him the further sum of $20, and received from him a receipt, of which the following is a copy:

" 10 /26 /20

Received of Mrs. Caroline R. Stanton the sum of Twenty ($20) Dollars in the matter of Stanton vs. Stanton.

" STANTON *v.* STANTON." MORRIS DANGLER."

At the time that he demanded and received this money, he had been suspended for a period of over four months. After the respondent had received the money, he told Mrs. Stanton that she would have to go to a lawyer in New Jersey, whom he named, who would take care of the matter. She accordingly called upon the lawyer, whom respondent admitted he did not know. The New Jersey lawyer accepted her case and obtained his fee from her husband by an allowance from the court. The respondent rendered absolutely no services in the matter, and at all times concealed from her that he had been suspended from practice.

It is clearly established that respondent continued to practice law in violation of the order of this court suspending him therefrom, and in the course of such practice imposed upon his clients in the four instances enumerated, taking money from them as fees for services never performed, and which he failed to return to them.

It follows that he should be disbarred.

PAGE, MERRELL, FINCH and McAVOY, JJ., concur.

Respondent disbarred. Settle order on notice.